FILED
2012 Nov-15 AM 09:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION**

CHARLES ALDRIDGE,

PLAINTIFF,

VS. CASE NO.: CV-11-J-2470-J

MICHAEL J. ASTRUE,
Commissioner of Social Security,

DEFENDANT.

**MEMORANDUM OPINION**

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

**Procedural Background**

The plaintiff applied for disability insurance benefits due to diabetes, high blood pressure, insomnia, arthritis in his knees, ankles and back, gastrointestinal reflux disease, and gout, which together limit his ability to stand, walk, climb and sit (R. 127). He also suffers from problems with dizziness and concentration (R. 127). His initial application was denied (R. 101-107) and the plaintiff requested a hearing in front of an administrative law judge (ALJ),which was subsequently held on

October 21, 2009 (R. 49). The ALJ thereafter found that the plaintiff was not under a disability at any time through the date of the decision (R. 10-30). The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on May 16, 2011 (R.1-3). The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1). The plaintiff argues that the ALJ's determinations are not based on substantial evidence (doc. 16).

The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for calculation of the plaintiff's benefits.

**Factual Background**

The plaintiff was born on November 21, 1959, making him 49 at the time of his hearing (R. 53). He completed high school but received no additional training (R 54), and has worked for the last 28 years as a plant control operator for the power company (R. 55). The plaintiff had issues with alcohol, but quit drinking in 2007 and believes his physical health has improved some since then (R. 60-61). However, he feels as though his mental health has gotten worse, and needs assistance with his finances and day to day "keeping up" (R. 61). He is forgetful, gets confused easily and cannot complete simple tasks (R. 62). He takes medication for anxiety and

depression, but does not think it helps (R. 75). He has trouble walking and issues with gout flare ups in his left knee and ankle (R. 66). When his gout flares up, about four times a year, he stays off his feet for a week to ten days at a time (R. 67). He also has trouble maintaining his balance and has fallen (R. 69-70).

The plaintiff testified he could walk one city block, after which he would be weak and tired (R. 77-78). He believed he could stand 3-4 minutes because of dizziness and lack of balance (R. 79-80). He did not have any idea how long he could sit and did not think he could lift ten pounds (R. 80-81).

According to the Vocational Expert (VE), the plaintiff's past work was light and semi-skilled, but had components which were heavy and skilled as well (R. 90). When asked to assume an individual with a high school education who could perform medium work, with limitations of no driving, no unrestricted heights, no pushing or pulling with his lower extremities, with only repetitive, non-complex tasks, the VE stated numerous jobs would exist which accommodated such limitations (R. 90-91). Jobs would also exist at the light and sedentary levels (R. 91-92). None of the plaintiff's past relevant work would meet the above limitations, however (R. 92). If a sit/stand option was added to the above limitations, it would rule out all the jobs identified by the VE (R. 93-94).

The plaintiff's medical records reflect a history of gout as least since 1993 (R. 189). Similarly, the plaintiff's history of dizziness is first noted in medical records from 1992 (R. 209-210). A record from 1998 reflects that the plaintiff has a history of essential hypertension, diabetes and gout (R. 220). GERD was added to the plaintiff's list that year as well (R. 227).

In February 2007, Dr. Bill Yates, one of plaintiff's treating physicians, opined that the plaintiff should be placed on disability (R. 274). He noted that as the plaintiff's blood sugar goes up and down combined with his problems with dizziness, the plaintiff is unable to think clearly, causing him to make mistakes at work (R. 274, 342). Additionally, the plaintiff could pass out if his blood sugar drops too much (R. 274).

A consultative evaluation in May 2007 found the plaintiff to suffer from a hypertension, gout, degenerative joint disease in his knees and ankles, non-insulin dependent diabetes, GERD, and peripheral neuropathy (R. 282). The examiner noted strength of 4/5 in plaintiff's extremities, and decreased sensation in plaintiff's feet (R. 280). He also noted that the plaintiff's gait was slow, he was unable to stoop, kneel or crouch due to poor balance (R. 281). The plaintiff was also unable to heel toe walk or stand with his eyes closed (R. 281). He was also unable to flex his lower spine due to poor balance and pain (R. 283). The examiner opined that the plaintiff could do

minimal standing, was unable to walk without a walker, could do no lifting over 15 pounds, no carrying over 10 pounds, and could perform minimal handling of objects, (R. 285).

In May 2007 the plaintiff was hospitalized for worsening dizziness, and diagnosed with anemia secondary to chronic renal disease, end-stage renal disease, gout, psoriasis, osteoarthritis, hypertension and diabetes (R. 292-293). The plaintiff was again hospitalized that month due to hepatic failure secondary to alcohol abuse (R. 307-331, 336).

A physical residual functional capacities assessment completed by a non-medical examiner in July 2007 found that the plaintiff was unable to work at the present time, but thought he would be able to return to work in less than twelve months (R. 367). Dr. Jack Mauldin, another of plaintiff's treating physicians, wrote a letter in August 2007 stating that he followed the plaintiff for chronic liver disease (R. 372). Dr. Mauldin stated that a component of that disease was chronic hepatic encephalopathy, which causes mental confusion, slowness of activity, difficulty with mental requirements and sometimes bizarre activity (R. 372). Dr. Mauldin noted this was a chronic process and that disability was in order (R. 372).

In April 2008 the plaintiff was referred by his attorney to John R. Goff, Ph.D., for a psychological consultation (R. 373-378). Dr. Goff noted the plaintiff admitted

to depression and fell in the borderline range of intelligence (R. 375). Dr. Goff, through testing, found that the plaintiff exhibited organic brain dysfunction, deficits in manual dexterity, deficits in memory function, and a suggestion of the onset of dementia (R. 376-377). He opined that the prognosis for recovery of these deficits was "nearly nonexistent," and that the plaintiff suffered from a dementia which "easily represents a severe impairment." (R. 377-378). In completing a Mental Source Opinion Form (Mental), Dr. Goff noted that the plaintiff had marked or extreme limitations in all areas of functioning, except for maintaining activities of daily living, in which the plaintiff had moderate limitations (R. 379-380).

Medical records from Dr. David Tharpe in April 2008 noted that physically, the plaintiff was improving (R. 381-382), although in 2008 Dr. Alderson recorded ongoing depression[1] (R. 435, 441, 461). In February 2008 Dr. Mauldin noted that the plaintiff had made a "remarkable recovery" from hepatic failure and anemia, and in August 2008 found that the plaintiff was making "exquisite progress" (R. 400-401). However, he continued to have problems with dizziness (R. 415, 422, 492). A record in May 2008 reflects that the plaintiff has an endovascular repair of an abdominal aortic aneurysm (R. 512).

[1]Dr. Alderson first noted depression in August 2007. He stated he did not add antidepressants to plaintiff's medical regime because he wanted to allow more time for plaintiff's kidneys and liver to recover (R. 461).

In March 2009 the plaintiff was sent to David Gordon, M.D., for a physical consultative evaluation, Dr. Gordon found the plaintiff to have full muscle strength and full sensation in all extremities (R. 469). He found the plaintiff to have no problems sitting, standing, squatting, walking, and toe and heel walking (R. 469). He diagnosed the plaintiff with gouty arthritis in both knees, kidney stones, gallstones, hepatic cirrhosis, diabetes, and hypertension (R. 470). In a Medical Source Statement (Physical), Dr. Gordon found the plaintiff able to lift and carry up to 10 pounds continuously and up to 20 pounds frequently, able to sit four 4 hours at a time and 8 hours with breaks, able to stand and walk for 1 hour each at a time and 4 hours a day with breaks, could perform reaching and handling activities with both hands on a frequent to continuous basis, and could use his feet to operate foot controls on a frequent basis (R. 471-473). He did note the plaintiff could not climb ladders, but found the plaintiff could climb stairs, stoop, kneel and crouch on an occasional basis (R. 474). He also assigned some environmental limitations to the plaintiff (R. 475).

A February 2009 follow up visit with Dr. Alderson found the plaintiff to be doing fairly well and noted his depression and anxiety were improving, his anemia, reflux and diabetes were stable, and his hepatorenal failure was resolved (R. 487-488). In March 2009 Dr. Mauldin noted problems of cirrhosis, gallstones, and skin lesions, which he believed to be psoriasis (R. 524). In a May 2009 follow-up visit

with Dr. Yates, the plaintiff was found to have made "remarkable" progress (R. 484). Full return of renal function was noted (R. 485).

In sworn testimony taken from Dr. Alderson in March 2009, Dr. Alderson stated his diagnoses of plaintiff included a previous history of alcoholism, anemia, anxiety with depression, arthritis, compulsive personality disorder, Type II diabetes, hyperlipidemia, and hepatorenal failure, since resolved (R. 556-557). Dr. Alderson believed that ongoing issues with anxiety and depression were the plaintiff's most debilitating ailments, but also noted arthritis would be too (R. 557). He was doubtful the plaintiff could return to full time work and noted his ailments would require excessive work absences (R. 561-563).

The ALJ concluded that plaintiff suffered from the severe impairments of gout, depression, and anxiety (R. 21). No mention is made of arthritis, or chronic hepatic encephalopathy, and diabetes, hypertension, GERD and kidney disease were all found by the ALJ to be "non-severe" (R. 21). The ALJ discounted the plaintiff's testimony and medical records concerning dizziness, because one-time examiner Dr. Gordon did not observe balance problems (R. 22). The ALJ stated that "[n]o treating, examining, or reviewing physician has suggested the existence of any impairment or combination of impairments that would meet or equal the criteria of any listed impairment" (R. 22).

In order to reach such a conclusion, the ALJ implicitly ignored the findings of Dr. Goff, who believed the plaintiff suffers from marked to extreme mental impairments. Indeed, the ALJ substituted his judgment in assessing such impairments, finding the plaintiff had no more than mild to moderate difficulties (R. 22-23).

The ALJ concluded that the plaintiff could perform a limited range of light work (R. 27). On that basis, the ALJ ruled that the plaintiff was not under a disability at any time through the date of the decision (R. 30).

**Standard of Review**

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th

Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). This court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993).

However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). The Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

It is well established that the ALJ, in making a disability determination, must consider the combined effects of all impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir.2002); *Jones v. Dept. of Health & Human Servs*., 941 F.2d

1529, 1533 (11th Cir.1991). If the claimant alleges multiple impairments, the claimant may be found disabled even though no single impairment is considered disabling. *Walker v. Bowen*, 826 F.2d 996 (11th Cir.1987).

**Legal Analysis**

The ALJ determined the plaintiff retained the residual functioning capacity to perform a limited range of light work. To reach this conclusion, the ALJ disregarded large portions of medical evidence, misrepresents other records and completely ignores plaintiff's treating and consulting medical professional's opinions. Most glaringly, the ALJ ignores the testing by Dr. Goff, and the ongoing nature of gout and flare-ups therefrom.

As set forth above, Dr. Goff, through testing, found that the plaintiff exhibited organic brain dysfunction, deficits in manual dexterity, deficits in memory function, and a suggestion of the onset of dementia (R. 376-377). He opined that the prognosis for recovery of these deficits was "nearly nonexistent," and that the plaintiff suffered from a dementia which "easily represents a severe impairment." (R. 377-378). In completing a Mental Source Opinion Form (Mental), Dr. Goff noted that the plaintiff had marked or extreme limitations in all areas of functioning, except for maintaining activities of daily living, in which the plaintiff had moderate limitations (R. 379-380).

No other mental health professional has examined the plaintiff, and his treating physicians have noted that the plaintiff suffers from ongoing depression and anxiety. The ALJ chose, without any evidentiary support, to simply ignore Dr. Goff's findings and the testing underlying them, and substitute his own opinions as to plaintiff's mental state. The ALJ further chose to ignore the plaintiff's unrefuted testimony that gout flare ups cause him to be bedridden for seven to ten days at a time. The ALJ finds Dr. Goff's opinions to be "at odds with and cannot be reconciled with the overall weight [of the] objective medical records.... particularly those reports from his treating physicians" (R. 24). The ALJ then finds the treating physicians opinions to be "at odds with the contemporaneous objective medical records...." (R. 26). However, the court finds a straight reading of the medical opinions in this record reveals that the only doctor who believed the plaintiff was employable was the one time examiner Dr. Gordon.

The ALJ also disbelieves plaintiff's treating physician's opinion that the plaintiff's arthritis contributes to his inability to work because "the only pain medication the claimant takes is Ultram" (R. 27). However, the plaintiff is also prescribed Indocin, which is

> used to relieve moderate to severe pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints), rheumatoid arthritis (arthritis caused by swelling of the lining of the joints), and ankylosing spondylitis (arthritis that mainly

> affects the spine). Indomethacin is also used to treat pain in the shoulder caused by bursitis (inflammation of a fluid-filled sac in the shoulder joint) and tendinitis (inflammation of the tissue that connects muscle to bone). Indomethacin immediate-release capsules, suspension (liquid) and suppositories are also used to treat acute gouty arthritis (attacks of severe joint pain and swelling caused by a build-up of certain substances in the joints). Indomethacin is in a class of medications called NSAIDs. It works by stopping the body's production of a substance that causes pain, fever, and inflammation.

http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000524/.

Similarly, Ultram is used to

> relieve moderate to moderately severe pain. Tramadol extended-release tablets are only used by people who are expected to need medication to relieve pain around-the-clock for a long time. Tramadol is in a class of medications called opiate agonists. It works by changing the way the body senses pain.

http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960/

Thus, the court can find no relevance in the ALJ's observation that the "only pain medication the claimant takes is Ultram" (R. 27).

The ALJ concludes that because the plaintiff can bathe himself and make a sandwich, he has only minimal restrictions in his daily activities (R. 22). The plaintiff testified he relies on his sister for help with "day to day, routine, everyday business" (R. 61). He does not go to the store by himself, he gets confused and forgetful, and has trouble with short term memory (R. 62). This testimony was wholly ignored by the ALJ, but completely supported by Dr. Goff's findings.

The fact that the plaintiff can make a sandwich and other minimal daily activities do not translate into being able to perform work on a full time regular basis. *See Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997); *Venette v. Apfel,* 14 F.Supp.2d 1307, 1314 (S.D.Fla.1998). This is especially true in light of plaintiff's testimony that he is forgetful, gets confused and has bouts of dizziness. Of course, the plaintiff's testimony concerning his memory deficits is wholly supported by the findings of Dr. Goff, who confirmed the same through objective testing.

The court further finds the record devoid of substantial evidence to support the ALJ's decision with regard to the medical evidence. Although the ALJ uses subsequent medical records to discount all the treating physicians' opinions that the plaintiff is unable to work, no such retraction by the treating physicians appears in the record. Rather, approximately two years after opining the plaintiff was unable to work, Dr. Alderson again opined that the plaintiff was unable to work. However, the ALJ opted to give little weight to Dr. Alderson's opinions because the month before he opined that the plaintiff was unable to work, he noted in a medical record that the plaintiff's mental state was stable and improving (R. 27). The court notes "improving" does not mean "improved." Likewise, in finding the plaintiff "improved" the ALJ ignored Dr. Mauldin's diagnosis of chronic hepatic encephalopathy, which causes mental confusion, slowness of activity, difficulty with mental requirements

and sometimes bizarre activity, as well as Dr. Mauldin's statement that it was a chronic process. (R. 372). Dr. Mauldin's statement clearly supports a finding that "improving" does not amount to "capable of gainful employment."

When evaluating an applicant's claim for social security disability benefits, the ALJ must give "substantial weight" to the opinion of the applicant's treating physician "unless good cause exists for not heeding the treating physician's diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991). Here, that good cause is lacking. The Eleventh Circuit has defined "good cause" as: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Lewis*, 125 F.3d at 1440 (quotation marks and citations omitted). If the ALJ disregards or accords less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and the failure to do so is reversible error. *Id*. The court finds none of the indicia of "good cause" in the facts before this court.

Nothing in the record supports the ALJ's conclusion that the plaintiff can perform the range of light work crafted by the ALJ. The court finds that the ALJ could only reach his conclusions by ignoring or substituting his judgment for the medical evidence contained in the record, as set forth above.

This court finds that the records of the treating physician offers substantial support for the plaintiff's allegations. No medical evidence contradict their opinions and conclusions, none of those opinions were ever withdrawn, and none of them ever opined that the plaintiff was malingering. Rather, the improvements in medical records seem to reflect plaintiff's recovery from complete renal failure, and not that he was physically or mentally capable of substantial gainful employment. No medical evidence in the record refutes the plaintiff's allegations.

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir.1984). A claimant may be entitled to an immediate award of benefits where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability. *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985). Because the ALJ's findings contradict the medical evidence in the record, this case is due to be reversed.

## IV. Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have

made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984). Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 at 534; *Bowen v. Heckler*, 748 F.2d 629 (11th Cir.1984).

Based on the lack of substantial evidence in support of the ALJ's findings and the ALJ's failure to apply the proper legal standards, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** this case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** this the 15th day of November, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE